IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| Carl Thom, Jr., | Case No. 3:07 CV 294 |
|            Plaintiff, | MEMORANDUM OPINION AND ORDER |
| -vs- | JUDGE JACK ZOUHARY |
| American Standard, Inc., | |
|            Defendant. | |

This matter is before the Court on Defendant's Motion for Summary Judgment (Doc. No. 27) and Plaintiff's Motion for Partial Summary Judgment (Doc. No. 29). Both parties respectively filed Oppositions (Doc. Nos. 35 & 36) and Replies (Doc. Nos. 37 & 38). Plaintiff asserts an FMLA interference claim and an FMLA retaliation claim; Defendant asserts there was no violation because Plaintiff's FMLA leave had expired prior to his termination.

## BACKGROUND

Plaintiff, Carl Thom, Jr., was employed as a molder with Defendant, American Standard, Inc., from July 16, 1969 until June, 17, 2005. In February 2005, Plaintiff requested leave under the Family and Medical Leave Act ("FMLA") for the time period from April 27, 2005 to June 27, 2005 for shoulder surgery and recovery. Following approval of the leave by Defendant, Plaintiff underwent surgery on April 27. On May 31, following an appointment with his surgeon, Plaintiff returned to work with light duty restrictions and an unrestricted return-to-work date of June 13. Defendant

refused to provide temporary light duty work for non work-related injuries, and Plaintiff was sent home.

On June 14, Defendant contacted Plaintiff because he had failed to report to work on June 13. Defendant, attempting to clarify Plaintiff's return to work, called Plaintiff to inform him that, based on the May 31 return-to-work slip, he was to report to work on June 13. Plaintiff advised that because of increased pain, he would be unable to return to work until June 27, the original expiration of his FMLA leave. Plaintiff was unable to schedule an appointment with his surgeon for re-evaluation but did schedule an appointment with his primary care physician for the morning of June 17. After that appointment, Plaintiff returned to work with a medical slip stating "patient may return to work/school on 7/18/2005." However, because he missed work from June 13 to June 17 and because Defendant treated these days as unexcused absences, Plaintiff exceeded his allowable absences pursuant to the Collective Bargaining Agreement (CBA) and Defendant terminated his employment.

### SUMMARY JUDGMENT STANDARD

Pursuant to Federal Civil Rule 56(c), summary judgment is appropriate where there is "no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law." *Id*. When considering a motion for summary judgment, the Court must draw all inferences from the record in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The Court is not permitted to weigh the evidence or determine the truth of any matter in dispute; rather, the Court determines only whether the case contains sufficient evidence from which a jury could reasonably find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).

**ANALYSIS**

**Arbitration Decision**

Following Plaintiff's termination, he filed a grievance with his union, the Glass, Molders, Pottery, Plastics & Allied Workers International, Local No. 7A. On January 10, 2006, an arbitration was held pursuant to the CBA, and the arbitrator returned an award in favor of American Standard, upholding the discharge. Defendant argued in its Motion for Summary Judgement that the arbitration award was a complete bar to Plaintiff's federal statutory claim because there was a "'clear and unmistakable' waiver of that claim in the CBA" (Doc. No. 27, p. 12).

However, in Defendant's Reply and during oral argument, Defendant conceded that there was no waiver in the CBA and the arbitration decision against Plaintiff does not preclude him from litigating his FMLA claims in federal court (Doc. No. 35 at p. 5).[1] Instead, Defendant argues the arbitration award is "particularly compelling" and "persuasive evidence" (Doc. Nos. 27 at p. 13 & 35 at p. 6). Not so. The arbitration decision dealt only with whether Plaintiff was dismissed for just cause and did not involve the FMLA claims raised in this lawsuit.

**FMLA Interference**

To establish an FMLA interference claim, Plaintiff must demonstrate: (1) he is an eligible employee; (2) Defendant is a covered employer; (3) Plaintiff was entitled to leave under the FMLA

---

[1] Although the Sixth Circuit has not yet decided whether arbitration awards preclude FMLA claims, it has recognized arbitration clauses in a collective bargaining agreement does not constitute a waiver of federal statutory rights. *See Becton v. Detroit Terminal of Consol. Freightways*, 687 F.2d 140, 141 (6th Cir. 1982). Courts within the Sixth Circuit have expanded this rationale to FMLA claims. *See Mitchell v. County of Wayne*, No. 05-73698, 2007 WL 850997, at *5 (E.D. Mich. Mar. 16, 2007) (arbitration decision not relevant to an FMLA action when benefits under the FMLA were not addressed in the grievance); *Joostberns v. United Parcel Serv., Inc.*, No. 5:03-CV-108, 2004 WL 3457633, at *3 (W.D. Mich. Oct. 6, 2004) (applying *Becton* to an FMLA claim).

because of a serious health condition; (4) he gave Defendant notice of his intention to take leave; and (5) Defendant denied Plaintiff FMLA benefits to which he was entitled. *See Cavin v. Honda of Am. Mfg., Inc.*, 346 F.3d 713, 719 (6th Cir. 2003). It is undisputed Plaintiff was an "eligible employee," Defendant was a "covered employer," and Plaintiff's surgery was a "serious health condition" as defined by the FMLA. The parties also agree Plaintiff provided notice and Defendant certified his leave in February 2005. Thus, the only contested issue is whether Plaintiff's termination denied him leave to which he was entitled under the FMLA.

The FMLA permits "an eligible employee of a covered employer to use up to 12 weeks of leave during any 12 month period for certain protected reasons, including a serious health condition that makes the employee unable to perform the functions of [his] position." 29 U.S.C. § 2162(a). The employee also has a right to return to his job or an equivalent job after using protected leave. 29 U.S.C. § 2164(a). However, an employee who exceeds the permitted FMLA leave has no right to return to his job. *See* 29 C.F.R. § 825.214(b); *Coker v. Mcfaul*, 247 F. App'x 609, 620 (6th Cir. 2007); *Hicks v. Leroy's Jewelers, Inc.*, No. 98-6596, 2000 WL 1033029, at *5 (6th Cir. July 17, 2000). It is unlawful for an employer to "interfere with, restrain, or deny the exercise of or attempt to exercise, any right provided" by the FMLA. 29 U.S.C. § 2615(a)(1).

The FMLA further permits an employer "to choose any one of the following methods for determining the '12-month period' in which the 12 weeks of leave entitlement occurs":

1. The calendar year;

2. Any fixed 12-month "leave year," such as a fiscal year, a year required by State law, or a year starting on an employee's "anniversary" date;

3. The 12-month period measured forward from the date any employee's first FMLA leave begins; or,

4

>   4.  A "rolling" 12-month period measured backward from the date an employee uses any FMLA leave (except that such measure may not extend back before August 5, 1993).

29 C.F.R. § 825.200(b). The first and fourth methods are relevant to this action. Under the first method, known as the calendar year method, an employee is eligible for 12 weeks of FMLA leave from Janurary 1 until December 31 each year. "An employee could, therefore, take 12 weeks of leave at the end of the year and 12 weeks at the beginning of the following year." 29 C.F.R. § 825.200(c). Under the fourth method, known as the rolling method:

> each time an employee takes FMLA leave the remaining leave entitlement would be any balance of the 12 weeks which has not been used during the immediately preceding 12 months. For example, if an employee has taken eight weeks of leave during the past 12 months, an additional four weeks of leave could be taken.

*Id.* Employers may "choose any one of the alternatives in paragraph (b) of this section provided the alternative chosen is applied consistently and uniformly to all employees." 29 C.F.R. § 825.200(d)(1). 29 C.F.R. § 825.200(e) addresses the situation when no option is made:

> if an employer fails to select one of the options in paragraph (b) of this section for measuring the 12-month period, the option that provides the most beneficial outcome for the employee will be used. The employer may subsequently select an option only by providing the 60-day notice to all employees of the option the employer intends to implement. During the running of the 60-day period any other employee who needs FMLA leave may use the option providing the most beneficial outcome to that employee. At the conclusion of the 60-day period the employer may implement the selected option.

Defendant contends they have always utilized the rolling method for calculating FMLA leave, and under this method Plaintiff's permitted leave expired on June 13, 2005, due to 5 weeks of leave taken in October 2004. Plaintiff maintains that because Defendant did not disclose the method of calculating leave, under § 825.200(e) Plaintiff is entitled to the method that provides the most

beneficial outcome. Using the calendar year method, Plaintiff's permitted leave would expire July 18, 2005.

In *Austin v. Fuel Systems, LLC*, 379 F. Supp. 2d 884, 890-896 (W.D. Mich. 2004), the court provided an extensive analysis of the Ninth Circuit's decision in *Bachelder v. America West Airlines, Inc.*, 259 F.3d 1112, 1117 (9th Cir. 2001) (holding that employers must take active steps to provide notice to employees of the method selected for computing FMLA leave). The *Austin* court concluded "employers are required to notify employees of the method of FMLA leave calculation, and that when employers fail to do so, leave is to be calculated in the manner most beneficial to the employee." *Austin*, 379 F. Supp. 2d at 896. That court further held that *Bachelder* required some effort by the employer to communicate the policy. "[E]mployers are to take active steps to inform employees of the method selected for calculating leave." *Id.* at 894. This Court adopts the analysis of *Austin* and holds Defendant is required to provide notice to employees on the method of calculating FMLA leave.[2]

Defendant here failed to provide notice to employees of the method for calculating FMLA leave. Defendant offers not a single citation to the Record that it took active steps to provide its policy to employees. In an attempt to establish that company policy was to use the rolling method for leave calculation, Defendant points to several documents, including the Collective Bargaining

---

[2]

Courts holding otherwise have only given cursory analysis to the FMLA's notice issue while both *Bachelder* and *Austin* provided extensive and persuasive reasoning. *See Kelso v. Corning Cable Sys. Int'l Corp.*, 224 F. Supp. 2d 1052 (W.D.N.C. 2002) (providing only two sentences of analysis on the notice issue: "The Court can find no such statutory requirement. The only regulation that addresses that issue is part 825.200(d)(1), which provides notice be given if the employer changes calculation periods."); *Philips v. Leyor-Somer North America*, No. 01-1046-T, 2003 WL 1790941 (W.D. Tenn. Mar. 28, 2003) (distinguishing *Bachelder,* by holding if written material is distributed to employees, such as an employee handbook, only then does the employer have to provide notice of the calculation method).

Agreement between Defendant and the Glass, Molders, Pottery, Plastics & Allied Workers International Union, Local No. 7A; the American Standards Family and Medical Leave Policy - Hourly, dated November 1, 2003 (2003 Leave Policy); and the American Standards Companies Family, Parental and Medical Leave of Absence Policy, dated March 1, 2005 (2005 Leave Policy). However, neither the CBA nor the 2003 Leave Policy provide employees with **any** guidance as to the company practice for calculating FMLA leave, and thus neither document satisfies the notice requirement.

The CBA only discusses the FMLA in Appendix C, which states that leave in accordance with the "FMLA Policy" will be recorded as an "Excused Absence." The CBA nowhere discusses the method for calculating FMLA leave or what the FMLA policy is. The 2003 Leave Policy is also silent as to the method for calculating FMLA leave. The Provisions section of the Policy merely states "[e]ligible employees may be granted leave according to the following provisions: 12 weeks unpaid leave under the Family Medical Leave Act." Furthermore, Amy Baker, former human resources generalist for Defendant, admitted the 2003 Leave Policy does not tell an employee the method for FMLA leave calculation (Dep. Baker, p. 80).

With no evidence of written notice, Defendant then asserts that a human resources specialist would review the 2003 Leave Policy with employees when they requested FMLA leave. Yet the company paperwork, specifically, the Employer Response to Employee Request for Family or Medical Leave (Response), does **not** specify the calculation method but rather merely asserts "a right under the FMLA for up to 12 weeks of unpaid leave in a 12-month period" (Dep. Baker, Ex. 12). Amy Baker admitted the Response was merely a "guideline" and was not used for every FMLA leave request (Dep. Baker, p. 107). The Response for Plaintiff, signed by Doris Puffenberger, human

7

resources coordinator, identifies April 27, 2005 to June 27, 2005 as the beginning and end dates for his leave. These dates contradict Defendant's assertion that the method for calculating leave is a rolling method, because under such a calculation Plaintiff would not have been entitled to the agreed upon 8 weeks of leave.[3] Furthermore, the Response (Questions 1-2) indicates Plaintiff is eligible for leave under the FMLA and his requested leave will count against his annual FMLA total. Again, this Response fails to provide Plaintiff with notice of the method of FMLA leave calculation. Moreover, the dates listed on the form indicate Plaintiff was entitled to at least the 8 weeks that he requested, consistent with a calendar year calculation.

Plaintiff had no notice, written or oral, as to the rolling method. Defendant provided two affidavits from union officers, but these affidavits only state that Defendant's policy "has always been calculated on a rolling 12-month period" (Doc. No. 53, Exs. C & D). These affidavits do not mention any steps taken to communicate such a policy. Whether company or union officers understood a rolling method applied does not satisfy the requirement to advise all employees. What select employees or officials may have understood the policy to be is not the issue. Without notice, what efficacy is the policy?

Defense counsel also admitted during oral argument there was no dispositive evidence that the 2003 Leave Policy mentioned the calculation method or that anyone in the human resources department informed employees, either through bulletin board announcements, meetings or handbooks, of the calculation method. Failure to provide this notice to employees is akin to failure of the employer to choose a calculation method. *See Austin*, 379 F. Supp. 2d at 896. Without a

---

[3] Using the rolling method, Plaintiff only had 36 days (7 weeks) of FMLA leave remaining when he requested his leave in February 2005. Within the previous 6 months, Plaintiff had used 22 days of FMLA leave in October 2004 and November 2004, and one day in both December 2004 and February 2005.

chosen method, the Court must apply the method most beneficial to Plaintiff, in this case the calendar year method.

In contrast, the 2005 Leave Policy does establish written notice of the rolling method for calculating FMLA leave.[4] However, this policy became effective March 1, 2005. First, March 1, 2005 is **after** Plaintiff applied for and was approved for leave on February 17, 2005. Although Plaintiff did not begin the protected leave until April 27, 2005, because he applied and was approved before the new policy commenced, the old policy applies. Second, the FMLA requires a 60 day window after implementing a new method for FMLA leave calculation. 29 C.F.R. § 825.200(e). During this 60 day period, an employee may choose either the old or new method for calculating leave, whichever is most beneficial to the employee. Only after the 60 day period may the employer implement the new policy. *Id.* Here the new policy was implemented on March 1, 2005 and, therefore employees could choose either the "new" rolling method or the previously used calendar year method up until April 29, 2005. Plaintiff's leave began April 27, 2005, within the 60 day window and, therefore, Plaintiff was entitled to choose either method for calculating FMLA leave.

The implementation of the 2005 Leave Policy, which clearly identified the rolling method as the appropriate method for calculating leave, did not affect Plaintiff's available leave. Plaintiff was entitled to use the most beneficial method, the calendar method, for calculating his available FMLA leave. Under this method, his available leave reset on January 1, 2005 entitling him to 12 weeks of

---

[4] Defendant maintains the 2005 Leave Policy was not a new policy but instead was simply an update to the previous policy. With respect to the issue of calculating FMLA leave, this argument is not persuasive. The 2003 Policy did not contain any mention of the method for calculating leave while the 2005 Policy specifically identified the rolling method. Because the 2003 Policy was silent and employees were not provided notice of the calculation method, the 2005 Policy was clearly a new policy on this point.

FMLA leave. As such, Plaintiff was on protected leave through July 18 and his termination on June 17 violates the FMLA.

The Sixth Circuit also requires Plaintiff to show prejudice to succeed on an FMLA interference claim. *Coker v. McFaul*, 247 F. App'x 609, 619 (6th Cir. 2007) (plaintiff could not show prejudice because he exceeded available FMLA leave regardless of which calculation method was used). Plaintiff presents the termination as prejudice *per se*. Defendant counters that because his FMLA leave ended on June 13 there could not be prejudice for his discharge. If, as in *Coker*, Plaintiff's protected leave had expired, clearly there could be no showing of prejudice. But the Court has found above that Plaintiff had FMLA leave remaining when he was terminated. Termination while on protected leave is prejudicial.

Because the undisputed evidence shows Plaintiff was terminated while on protected FMLA leave and that the termination was prejudicial, partial summary judgment for the FMLA interference claim is appropriate.

**FMLA Retaliation**

Plaintiff claims his discharge was in retaliation for his taking protected FMLA leave in violation of 29 U.S.C. § 2615(a)(2). Section 2615(a)(2) provides "[i]t shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter." To demonstrate a *prima facie* case of retaliatory discharge, Plaintiff must show: (1) he availed himself of a protected right under the FMLA; (2) he was adversely affected by an employment decision when he was discharged; and (3) a causal connection exists between the exercise of his rights and his termination. *See Bryson v. Reigs Corp.*, 498 F.3d 561, 570 (6th Cir. 2007).

Defendant maintains Plaintiff did not raise retaliation in the Complaint and, because Plaintiff was discharged for exceeding his available FMLA leave, there can be no retaliation. While the Court recognizes that Plaintiff's retaliation claim is not well pled, it is sufficiently pled.[5] *See Wysong v. Dow Chemical Co.*, 503 F.3d 441, 446 (6th Cir. 2007) (the complaint only requires that defendant is placed on notice of what the claim is).

As previously addressed in the FMLA interference claim, Plaintiff had protective leave, satisfying the first requirement. His termination also satisfies the second factor requiring an adverse employment decision. The parties dispute the third requirement. Plaintiff provides evidence of retaliation for using FMLA leave, mainly proximity between the discharge and the use of FMLA leave, and assessing of absence points while on protected leave. Defendants argue the favorable arbitration decision identifies legitimate reasons for Plaintiff's termination. Thus, a genuine dispute of material fact surrounds the reason for Plaintiff's discharge, and the retaliation claim presents a jury issue.

## CONCLUSION

Defendant failed to provide the required notice to Plaintiff about the calculation method prior to the 2005 Leave Policy, allowing him to choose the most beneficial method, the calendar year method. Because of the 60 day transition window implementing the 2005 Leave Policy, this new Policy did not apply to Plaintiff's leave. Defendant asserts the 2005 Leave Policy was not a new

---

[5] Paragraph 22 of the Complaint:

> Defendant violated the provisions of 29 U.S.C. §§2601 et seq. including 29 U.S.C. §2615 by interfering with, restraining or denying Thom the exercise of rights provided under the FMLA and/or **by discharging Thom for asserting or otherwise exercising his rights under the Act**.

11

policy and, therefore, a transition window is not appropriate. However, because Defendant failed to provide notice to employees as required by *Bachelder*, the 2005 Leave Policy, specifically including the method of calculating leave, constitutes a new policy. Therefore, using the calendar method, Plaintiff was entitled to 12 weeks (60 working days) of protected leave, less one day taken in February of 2005, extending from April 27, 2005 to July 18, 2005. Plaintiff was terminated on June 17, while still on protected leave in violation of the FMLA. Plaintiff is entitled to judgment as a matter of law on the FMLA interference claim. There are disputed material facts as to whether Plaintiff's discharge was retaliatory.

Plaintiff's Motion for Partial Summary Judgment is granted in part and denied in part. Defendant's Motion for Summary Judgment is denied. Trial is limited to liability for the retaliation claim, and damages under both interference and retaliation claims.

IT IS SO ORDERED.

    s/ *Jack Zouhary*
JACK ZOUHARY
U. S. DISTRICT JUDGE

June 12, 2008