**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| **CARL THOM, JR.** | * | **Case No. 3:07CV0294** |
| Plaintiff, | * | **Judge Jack Zouhary** |
| vs. | * | **PLAINTIFF'S MOTION FOR AN AWARD OF BACK PAY, EQUITABLE RELIEF, PREJUDGMENT INTEREST, AND LIQUIDATED DAMAGES** |
| **AMERICAN STANDARD, INC.** | * | |
| Defendant. | * | |
| | | John D. Franklin (0055359) |
| | * | Kera L. Croteau (0082674) |
| | | R. Kevin Greenfield (0013017) |
| | * | FRANKLIN & GREENFIELD, LLC |
| | | 420 Madison Avenue, Suite 1101 |
| | * | Toledo, Ohio 43604 |
| | | (419) 243-9005 – Telephone |
| | * | (419) 243-9404 – Fax |
| | | Employmentattnys@aol.com |
| | * | |
| | | Attorneys for Plaintiff, |
| | * | Carl Thom, Jr. |
| * * * * * * | * * * * * * * | |

Plaintiff, Carl Thom, Jr. ("Thom"), by and through counsel, pursuant to 29 U.S.C. §2617(a)(1), respectfully requests this Court award Thom back pay, prejudgment interest, equitable relief in the form of reinstating his pension, and liquidated damages. The reasons for this Motion are set forth more fully in the attached Memorandum.

Respectfully submitted,

s/John D. Franklin
John D. Franklin
Attorney for Plaintiff

**MEMORANDUM**

**I.     BACK PAY**

**A.     Thom's Regular Rate of Pay**

As was preliminary decided by the Court and its jury instructions, Thom is entitled to back pay for the period of June 17, 2005 (his date of discharge) through December 31, 2007 (date of plant closing). Clearly the purpose of awarding back pay is to put Thom in the same position he would have been had he not been discharged. Obviously, Defendant American Standard, Inc. ("Defendant") is entitled to deduct from any award of back pay the amount of earnings and benefits from other employment received by Thom from June 17, 2005 through December 31, 2007. Thom is entitled to the amount of wages and benefits he would have earned had he remained employed by Defendant. Thom is not required to prove lost wages and benefits with precision; uncertainty as to the amount to be awarded must be resolved against Defendant.

From June 17, 2005 through December 31, 2007, the employment of Defendant's employees was governed by a Collective Bargaining Agreement ("Agreement") dated May 1, 2007 through May 4, 2007. (Deposition of Randall Swander, taken September 23, 2008 ("Swander Depo. II") p. 7-8, Ex. 1.) During the relevant time period, Thom worked in Labor Grade 4, in the position of Blocker Caser. (Swander Depo. II p. 8) According to the Agreement, Thom, as a grade 4 Blocker Caser, was paid an hourly rate of eighteen dollars ($18.00) per hour. Thus, for a preliminary assessment of Thom's annual rate, the Court should take eighteen dollars ($18.00) times forty (40) hours per week; then, that number should be multiplied by fifty-two (52) weeks for an initial annual salary of thirty-seven thousand four hundred and forty dollars ($37, 440.00). ($18.00x40x52=$37,440.00)

Based upon Swander's testimony, pursuant to the terms of the Agreement and Thom's seniority, Thom is also entitled to two (2) additional weeks of pay which are actually deemed vacation pay for which the employee is paid but does not actually take a vacation. (Swander Depo. II, p. 20.) Therefore, to the preliminary number of thirty-seven thousand four hundred and forty dollars ($37,440.00) by way of annual salary, the Court must add another two (2) weeks of pay. In order to determine the dollar amount to be added to thirty-seven thousand four hundred and forty dollars ($37,440.00), the Court should multiply eighteen dollars ($18.00) per hour by forty (40) hours per week times two (2) additional weeks. This equals an additional one thousand four hundred and forty dollars ($1,440.00). When added to the prior thirty-seven thousand four hundred and forty dollars ($37,440.00), Thom's annual salary without overtime is thirty-eight thousand eight hundred and eighty dollars ($38,880.00).

Once a yearly rate is established (without adding overtime), a weekly rate can be determined by dividing thirty-eight thousand eight hundred and eighty dollars ($38,880.00) by fifty-two (52) weeks for a year, which totals seven hundred and forty-seven dollars and seventy cents ($747.70) per week. From June 17, 2005 through December 31, 2007, Thom lost a total of one hundred thirty-two (132) weeks of work. Thus, the Court should multiply Thom's weekly rate of seven hundred and forty-seven dollars and seventy cents ($747.70) by the one hundred thirty-two (132) weeks from the date of discharge to December 31, 2007, which equals ninety-eight thousand six hundred ninety-six dollars and forty cents ($98,696.40) in backpay without adding in overtime or subtracting out any of his earnings during that time period.

### B. Overtime

Swander, in his second deposition, also testified that employees in Thom's classification were also entitled to work overtime pursuant to the terms of the Agreement. Swander testified that Plaintiff's exhibits 2, 3, 4, 5, and 6 were earning reports for Blocker Casers for the relevant time period beginning the second quarter of 2005 through the plant closing of December 31, 2007. (Swander Depo. II Exs. 2, 3, 4, 5, and 6, pp. 10, 20, 23, 25 & 30). Swander identified Paul R. Bonnell ("Bonnell") and Norbert Scherger ("Scherger") as Blocker Casers who worked during the relevant time period earning both their regular hourly wage as well as time and a half and double time for their overtime work. During the relevant time period, Swander testified Bonnell was the most senior Blocker Caser and that Scherger held the second highest seniority of a Blocker Caser (Swander Deposition II, p. 14). Swander further testified that had Thom worked during the relevant time period, based on his seniority, he would have been the second highest in seniority. (Swander Depo. II p. 15) Therefore, in calculating Thom's actual back pay, the Court most look at the overtime monies earned during the relevant time period by Scherger, which reveals the overtime that was available and in fact worked by the individual Blocker Caser with the second most seniority in the department.

A review of Bonnell's overtime for the relevant time period from June 17, 2005 through December 31, 2007, indicates that he worked nine hundred ninety-four (994) hours at time and a half and ninety-nine (99) hours of double time. The hours indicate that he was able to make an additional thirty thousand, four hundred and two dollars ($30,402.00) in overtime. Scherger, worked eight hundred fifty-eight and one half (858.5) hours of time and a half overtime and ninety-nine (99) hours of double time overtime for a total of twenty-six thousand seven hundred forty-three dollars and fifty cents ($26,743.50). Therefore, Thom requests that

the court recognize that he would have made an additional twenty-six thousand seven hundred and forty-three dollars and fifty cents ($26,743.50) in overtime during the relevant time period. By way of support Thom cites to his Social Security Statement indicating that for the years 1999 through 2003, his taxable earnings were as follows:

    1999   $51,810.00

    2000   $57,438.00

    2001   $53,274.00

    2002   $59,750.00

    2003   $61,473.00.

(*See* Thom's Social Security Statement, Plaintiff's Proposed Trial Exhibit No. 21, attached hereto as Exhibit 1). Therefore, his taxable earnings for the five year period prior to his FMLA leave in 2004 and 2005 averaged fifty-six thousand seven hundred and forty-nine dollars ($56,749.00). Clearly, Thom has provided evidence that in the past, he had worked a considerable amount of overtime beyond what Defendant would have paid him at eighteen dollars ($18.00) per hour times fifty-four (54) weeks per year. Furthermore, Thom has shown, based on his seniority, that according to the terms of the Agreement, he would have at least been able to work the hours of Scherger by way of overtime and that overtime would have totaled twenty-six thousand seven hundred forty-three dollars and fifty cents ($26,743.50).

### C.     Total Back Pay Less Mitigation

As demonstrated above, for the relevant time period, Thom's back pay equals ninety-eight thousand six hundred ninety-six dollars and forty cents ($98,696.40) plus twenty-six thousand seven hundred forty-three dollars and fifty cents ($26,743.50) for a total of one hundred twenty-five thousand four hundred thirty-nine dollars and ninety cents ($125,439.90)

5

Thom testified that after his discharge he became employed at Taiho Corporation of America ("Taiho"). (Thom Depo. p. 17)  Taiho is an automotive type manufacturer, which makes engine parts for Toyota. (Thom Depo. p. 17).  Thom indicated he is a machine operator at Taiho and that Taiho employed approximately three hundred (300) employees. (Thom Depo. p. 18).  Thom further testified he first began working at Taiho in April of 2006 and that he initially worked through a temporary agency, Pyramid Recruiting Services for approximately ninety (90) days. (Thom Depo. page 18).  Other than the monies he earned from Defendant prior to his discharge, Thom testified he had no additional income in 2005. (*See* Thom depo. pp. 18-34).  For 2006, Thom's W-2's from Pyramid Recruiting Services and Taiho show that he earned sixteen thousand seven hundred forty-eight dollars ($16,748.00). (*See* Thom's 2006 W-2s, Plaintiff's Proposed Trial Exhibit No. 16, attached hereto as Exhibit 2).  This is consistent with his social security statement which likewise shows that he earned sixteen thousand seven hundred forty-eight dollars ($16,748.00) in 2006. (*See* Exhibit 1).  In 2007, Thom's W-2 and Earning Summary from Taiho Corporations shows that he earned twenty thousand six hundred sixty-eight dollars and ninety-eight cents ($20,668.98). (*See* Thom's 2007 W-2, Plaintiff's Proposed Trial Exhibit No. 17, attached hereto as Exhibit 3).  During the relevant time period, Thom's total earned wages by which his back pay should be adjusted is thirty-seven thousand four hundred sixteen dollars and ninety-eight cents ($37, 416.98).  Therefore, Thom is making a request for eighty-eight thousand twenty-two dollars and ninety-two cents ($88,022.92).  This represents the amount he would have made: one hundred twenty-five thousand four hundred thirty-nine dollars and ninety cents ($125,439.90) less his actual earned income during the relevant time period of thirty-seven thousand four hundred sixteen dollars and ninety-eight cents ($37,416.98).

## II. PREJUDGMENT INTEREST

The FMLA also specifically provides that an employer which has violated the Act "shall be liable" for "interest on the amount [of lost wages] calculated at the prevailing rate." 29 U.S.C. § 2617(a)(1)(A)(ii). That provision mandates the award of prejudgment interest. *Killian v. Yorozu Automotive Tennessee, Inc.*, 454 F.3d 549, 558 (6th Cir. 2006). *Accord Hite v. Vermeer Mfg. Co.*, 446 F.3d 858, 869 (8th Cir. 2006) ("Section 2617 indicates that the award of such interest is mandatory.").

The FMLA does not, however, establish how a district court is to determine "the prevailing rate." The Court in *Hite* canvassed "various sources for determining an appropriate prejudgment interest rate, such as the prime rate, the statutory post-judgment interest rate, or the state statutory rate," before adopting the state interest rate for the FMLA. 361 F.Supp.2d 935, 949 (S.D. Iowa 2005). On appeal, the Court's approach was affirmed. 446 F.3d at 869-70. For employers doing business in Ohio that state statutory rate is the one they can assume applies to commercial litigation, and the approach of the *Hite* Court parallels the one taken in the Northern District of Ohio. *See United Steelworkers of A. v. Roemer Indus.,* 68 F.Supp.2d 843, 849 (N.D. Ohio 1999)("As the appropriate rate of prejudgment interest is not addressed by any federal statute, the rate contained in the applicable state law is used.").

Since O.R.C. 1343.03(A) was amended effective June 2, 2004, the interest rate in Ohio has been calculated by reference to the rate annually determined by the Ohio Department of Taxation pursuant to R.C. 5703.47. Before that amendment Ohio used a flat rate of 10% per annum. *See, e.g. Jones v. Progressive Preferred Ins. Co.* (9th Dist. App. 2006), 169 Ohio App.3d 291, 2006-Ohio-5420, 862 N.E.2d 850.

On its web site, at

http://tax.ohio.gov/divisions/ohio_individual/individual/interest_rates.stm, the Ohio Department of Taxation provides a table of annual certified interest rates. According to that table, the annual rate for 2005 was 5%, 2006 was 6%, 2007 was 8% and for 2008 was 8%.

"Prejudgment interest ordinarily should apply to each year an employee lost the use of his/her wages." *EEOC v. Kentucky State Police Dept.,* 80 F.3d 1086, 1099 (6th Cir. 1996). For ease of calculation, though, an average rate may be used for prejudgment interest. *See George v. GTE Directories Corp.,* 114 F.Supp.2d 1281, 1300 (D. Fla. 2000)(awarding prejudgment interest on back pay award based on average prime rate). The average from the Ohio Department of Taxation table for this period is 6.75%.

Combining the back pay to which Thom is entitled for the period from June 2005 through October 15, 2008 with an interest rate of 6.75% totals nineteen thousand three hundred ten dollars ($19,310.00). This figure is determined by multiplying Thom's back pay of eighty-eight thousand twenty-two dollars and ninety-two cents ($88,022.92) by 6.75% by 3.25 years. This is the amount of prejudgment interest mandated by the FMLA. Thus, Thom's back pay loss plus prejudgment interest totals eighty-eight thousand, twenty-two dollars and ninety-two cents ($88,022.92) (back pay) plus nineteen thousand, three hundred ten dollars ($19,310.00) (prejudgment interest) for a total of one hundred seven thousand, three hundred thirty-two dollars and ninety-two cents ($107,332.92).

### III.  PENSION PLAN

At the time of Thom's termination in June of 2005 he was 53 years old. As such, he was subject to a 36% decrease in his monthly pension. (Swander Depo. II p. 53 Ex. 9, page 118 section 4.2 (b)). Had Thom worked until the plant closed in December of 2007, he would have been eligible for an unreduced pension based on the rule of 75/80. In fact, employees

8

working in December of 2007 were given a 3 page document indicating the steps they would take in order to get a full retirement based on the 75/80 rule. (Swander Depo. II Ex. 10, p. 118). The 75/80 retirement states:

> An employee who shall have had at least ten (10) years of Vesting Service and (i) who shall have reached age 55 and whose combined age and Years of Vesting Service equal at least 75, or (ii) whose combined age and Years of Vesting Service equal at least 80, and, with respect to both clauses (i) and (ii) whose Vesting Service is broken by dismissal or separation due to permanent shutdown of a plant…shall be eligible to receive a pension as described in Section 5.4.

(American Standard Merged Hourly Pension Plan) ("Pension Plan"). As the Court will note, if an employee had at least ten (10) years of Vesting Service and reached age 55, because the plant had been permanently shut down the employee would be entitled to receive the pension that is described in Section 5.4. In Section 5.4 of the Pension Plan, a member who is eligible for a 75/80 retirement shall be eligible for a monthly pension benefit equal to the full amount they would have received as Normal Retirement Pension according to Section 5.1. (Swander Depo. II Ex. 10 p. 122). Section 5.1 allows for a Normal Retirement Pension unreduced by the 36% reduction that was applicable to Thom.

In his deposition Swander agreed full retirement pays more than a partial retirement. (Swander depo. II p. 52). Swander also admitted because Thom would have been age 55 in December of 2007 he would have been eligible for the 75/80 Normal Retirement Pension unreduced by the four percent (4%) per year reduction factor. (Swander depo. II pp. 53, 54). Furthermore, Swander testified that had Thom been employed December 31, 2007 and thereby received a Normal Retirement Pension, he could have elected to receive medical insurance as part of his retirement. (Id. p. 50). Swander also testified that if Thom had elected medical insurance these benefits would have also covered Thom's wife. (Id. p. 50). In addition, Thom

9

was not required to immediately exercise his right to medical insurance – thereby allowing Thom to later exercise his right to medical insurance should the need arise. (Id. p. 59).

Therefore, Thom respectfully requests this Court order Defendant to take all necessary steps to amend Thom's date of separation to December of 2007 and furthermore take all necessary steps to provide Thom his Normal Retirement Pension pursuant to 75/80 provision. This would require the Court to order Defendant to retroactively pay Thom an additional 36% from April of 2008, which was the date he began withdrawing his retirement. More importantly, Thom requests he be paid a full pension without reduction, and likewise that this Court order Defendant to provide Thom and his spouse retiree health benefits should the need for retiree health benefits arise in the future.

Should Defendant contend that they are precluded from changing Thom's retirement date, Thom respectfully requests this Court order Defendant to provide an annuity to Thom which pays out monthly any deficiency between what he is receiving because of the reduction factor and what he would have received as a Normal Retirement Pension.

### IV.     LIQUIDATED DAMAGES

#### A.     Standard for Granting Liquidated Damages for Violation of the FMLA.

Section 2617(a)(1)(A)(iii) of the FMLA authorizes an award of liquidated damages to an employee affected by an employer's violation of the FMLA. Liquidated damages may be awarded in an amount equal to the sum of the wages, salary, employment benefits, or other compensation denied or lost to an employee plus interest, calculated at the prevailing rate. *Id.*

In *Arban v. West Pub. Corp.* 345 F.3d 390 (6th Cir. 2006), the Sixth Circuit announced that the liquidated damages provision of the FMLA were intended to imitate the damages of the Fair Labor Standards Act. *Arban,* 345 F.3d at 408. As such, "a district court may not

10

exercise its discretionary authority to reduce or eliminate a liquidated damages award." *Id.* Thus, there is a "strong presumption under the statute in favor of doubling." *Accord Hite v. Vermeer Mfg. Co.*, 446 F.3d 858, 868-69 (8th Cir. 2006).

There is, however, an exception to the FMLA's "otherwise mandatory call for liquidated damages." *Thorson v. Gemini, Inc.* 205 F.3d 370, 383 (8th Cir. 2000). The Sixth Circuit mandates that the Court must find the employer met its "burden of **proving** that its 'failure to obey the statute was *both* in good faith and predicated upon such reasonable grounds that it would be unfair to impose upon it more than a compensatory verdict.'" *Arban, supra,* 345 F.3d at 408 (emphasis added and in the original). This exception assigns the employer a two prong burden. First, the employer must show that the act or omission which violated §2615 of the FMLA was subjectively in good faith. Second, the employer must show that it had objectively "reasonable grounds for believing that the act or omission was not a violation of §2615." Once the employer has satisfied this burden, only then may a Court, in its discretion, reduce the amount of liquidated damages. *Arban v. West Pub. Corp.* 345 F.3d 390 (6th Cir. 2006). *See McClanahan v. Mathews,* 440 F.2d 320, 322 (6th Cir. 1971); *Sherman v. AI/FOCS, Inc.,* 113 F. Supp. 2d 65 (D. Mass. 2000) (in assessing liquidated damages, the employer must prove that it reasonably believed that plaintiff's termination was not a violation of the act).

Nonetheless, "even if a trial court is satisfied that an employer acted both in good faith and reasonably," the decision to award liquidated damages is still within the discretion of the court. *Nero v. Industrial Molding Corp.,* 167 F.3d 921, 929 (5th Cir. 1999)(citations omitted). A Court **must** rely on the "strong presumption under the statute in favor of doubling" in awarding liquidated damages (or declining to reduce the damages award) regardless of the

11

showing by the employer. *See Id. See also Hite,* 446 F.3d at 868-69; *Walton v. United States Consumers Club, Inc.,* 786 F.2d 303, 310 (7th Cir. 1995) (doubling is the norm, not the exception). Given this strong presumption, Thom's award of damages must be doubled.

  **B.** **Defendant Cannot Show That It Acted In Good Faith In Interfering With Plaintiff's FMLA Rights.**

Although the statute itself does not define "good faith," the Sixth Circuit found that where an employer's attendance policy did not warrant an employee's discharge, the employer had not met its burden in establishing good faith. *See Wilkerson v. AutoZone, Inc.*, 152 Fed. Appx. 444, 451 (6th Cir. 2005). In the present matter, the evidence shows Thom was terminated while on protected leave and Defendant's attendance policy necessitated the termination of Thom's thirty-six (36) year employment. On June 12, 2008, this Court found Defendant terminated Thom while he was on protected leave. As Thom's absences were protected by the FMLA, Defendant could not assess Thom points under its attendance system. *See* 29 C.F.R. §825.220(c) (an employer cannot count FMLA leave under "no fault" attendance policies). As such, Thom is entitled to an award of liquidated damages.

Defendant mistakenly argues that its decision to terminate Thom was in good faith because it has always applied the rolling calendar as its calculating method. In fact, Defendant claims its actions were an honest mistake and not executed with an intentional disregard for the FMLA. Although the test for good faith is subjective, good faith requires more "than ignorance of the prevailing law or uncertainty about its development." *Williams v. Tri-County Growers, Inc.,* 747 F.2d 121, 129 (3rd Cir. 1984). *See Martin v. Cooper Electric Supply Co.,* 940 F.2d 896, 910 (3rd Cir. 1991) (That SNET did not purposefully violate the provisions of the FLSA is not sufficient to establish that it acted in good faith); *Hite v. Vermeer, Mfg. Co.,* 446 F.3d 858, 868 (8th Cir. 2006) (good faith requirement compels defendant to show that it

honestly intended to discover the laws of FMLA and act in conformance with it). If we abide by Defendant's analysis, any defendant's actions would be "reasonable" as long as they claim an "innocent mistake."

Assuming Defendant honestly committed an "innocent mistake," it still cannot overcome the burden of showing its actions were in good faith. Even if Thom's leave had in fact expired on June 13, 2005, as Defendant incorrectly claims, Defendant's contact with Thom concerning his FMLA clearly put Defendant on some type of notice that uncertainty existed as to Thom's correct return date. Moreover, it is undisputed that Defendant considered Thom entitled to approximately eight (8) weeks of FMLA leave beginning April 27, 2005, and so any argument that Defendant's calculating method produced an earlier expiration date for Thom's leave than the date Defendant itself designated in writing is absolutely absurd. *See Hunt v. Rapides Healthcare Systems. LLC* 277 F.3d 757, 765-66 (5th Cir. 2001).

There is no dispute that Defendant approved Thom for FMLA leave ***until*** June 27, 2005. Despite this fact, Defendant's Human Resource Generalist, Amy Baker ("Baker") contacted Thom to inquire why he did not return to work on June 13, 2005, his **anticipated** return to work date. (Baker depo. p. 122). Thom relayed to Baker that his approved FMLA leave excused him from work until June 27, 2005 and that Manager Jim Hall ("Hall") told him he was not to return to work until June 27, 2005. (Thom depo. pp. 122-23; 130-31). In addition, Thom informed Baker that he needed additional time off from work because of the continued problems he was experiencing with his shoulder. (Baker depo. p. 131, 171-172).

Baker informed Thom that his "absences" would be excused if he obtained a doctor's note. (Baker depo. 133-135). Although Thom was unable to see his surgeon on such short notice, Thom scheduled an appointment with his family doctor and left Baker a voicemail

13

informing her that he would bring in the necessary medical documentation on June 17, 2005 after his appointment. Amazingly, in spite of her knowledge that Thom would bring in the medical documentation after his appointment on June 17, 2005, Baker gave Thom additional attendance points when he did not show up at the start of his shift at 7:00 a.m. (Id. at pp. 112, 144, 146-47). Consequently, when Thom arrived at 10:30 a.m. on June 17, 2005 and presented Baker with his excuse from his doctor, he was unexpectedly greeted with a termination letter. (Id. at 155).

Baker was particularly aware that Thom was relying on his approved FMLA leave date of June 27, 2005 based on her conversations with Thom the week of June 14, 2005. Further, Baker reassured Thom that she would remove the accrued attendance points once he obtained medical documentation. Despite this fact, Thom was terminated the very day that he turned in his medical documentation excusing him from work.

Not only can Defendant not rely on its attendance policy to justify Thom's termination, the events leading to Thom's termination tends to show Defendant did not act in good faith. As such, Defendant has not met its burden in **proving** a good faith basis for Thom's termination. Thus, Thom is entitled to a doubling of his award of damages.

> C. **Defendant Cannot Show That It Had Objectively Reasonable Grounds For Believing That Its Decision To Terminate Thom Was Not A Violation Of The FMLA**

Even if the Court were to determine that Defendant acted in good faith with respect to Thom's termination, Defendant cannot meet its burden in demonstrating that it had objectively reasonable grounds for its belief that Thom's termination did not violate the FMLA. As stated above, Defendant originally approved Thom for FMLA leave until June 27, 2005. In addition, Thom informed Defendant that his shoulder prevented him from returning to work on his

anticipated return to work date, and subsequently obtained medical certification. Despite this, Defendant continued to charge Thom attendance points in violation of the FMLA. Further, Defendant terminated Thom's thirty-six (36) year employment even though it knew that Thom had an appointment with his physician and would be bringing in medical documentation that very day.

Even if Baker reasonably believed that Thom's return to work date was June 13, 2005, once he informed her that he needed an extension of that return to work date, Thom's absences were to be treated as FMLA leave until Defendant determined that he was not entitled to additional leave. *See Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 94 (2002). In expressing his need for additional leave, Thom was entitled to fifteen (15) days in order to obtain the appropriate certification of his serious health condition. As such, Baker could not charge Thom with attendance points until the expiration of that time period, or until the time in which Defendant determined that Thom was not entitled to additional leave. Although Thom informed Baker on June 14, 2005 of his need for additional leave, Defendant terminated his employment merely 3 days later on June 17, 2005 (12 days short of his statutorily protected time period in which to obtain certification).

Based on the foregoing, it is apparent that Defendant cannot establish that it had objectively reasonable grounds for believing Thom's termination did not violate the FMLA. Thus, Thom is entitled to recover liquidated damages in the amount of $107,332.92, an amount equal to Thom's back pay ($88,022.92) plus prejudgment interest ($19,310.00).

## V. <u>CONCLUSION</u>

Based on the foregoing testimony, relevant case law, documentary evidence and the record as a whole, Thom respectfully requests this Court order Defendant to pay Thom 1)

eighty-eight thousand, twenty-two dollars and ninety-two cents ($88,022.92) in back pay, 2) nineteen thousand three hundred ten dollars ($19,310.00) in prejudgment interest; and 3) one hundred seven thousand, three hundred thirty-two dollars and ninety-two cents ($107,332.92) in liquidated damages. Thom also respectfully requests this Court order Defendant to make him whole by reinstating his pension to a full unreduced Normal Retirement Pension, including retiree medical benefits as outlined above.

          Respectfully submitted,

          s/John D. Franklin
          John D. Franklin
          Attorney for Plaintiff

**CERTIFICATE OF SERVICE**

This is to certify that the foregoing Plaintiff's Motion for an Award of Back Pay, Equitable Relief, Prejudgment Interest and Liquidated Damages was filed electronically on October 15, 2008. Notice of this filing will be sent to Matt Besser and David Campbell, Counsel for Defendant, by operation of the Court's electronic filing system.

          s/John D. Franklin
          John D. Franklin