**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | | |
|---|---|---|
| **CARL THOM, JR.** | * | **Case No.: 3:07-CV-294** |
| Plaintiff, | * | **Judge Jack Zouhary** |
| vs. | * | **PLAINTIFF'S MEMORANDUM IN RESPONSE TO DEFENDANT'S BRIEF REGARDING ALLEGED DAMAGES ARISING OUT OF PLAINTIFF'S INTERFERENCE CLAIM** |
| **AMERICAN STANDARD, INC.** | * | |
| Defendant. | * | |
| | * | |
| | * | John D. Franklin (0055359) |
| | * | R. Kevin Greenfield (0013017) |
| | | FRANKLIN & GREENFIELD, LLC |
| | * | 420 Madison Avenue, Suite 1101 |
| | | Toledo, Ohio 43604 |
| | * | (419) 243-9005 - Telephone |
| | | (419) 243-9404 - Fax |
| | * | employmentattnys@aol.com |
| | * | Attorneys for Plaintiff, Carl Thom, Jr. |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## I. INTRODUCTION

On October 15, 2008, Defendant filed its Brief Regarding Alleged Damages Arising Out of Plaintiff's FMLA Interference Claim ("Defendant's Brief"). In its brief, Defendant once again attempts to relitigate several of the issues which have already been decided in this matter.[1] Defendant attempts to get a second bite at the apple by arguing that it terminated Thom in compliance with its Collective Bargaining Agreement ("CBA"). However this Court has ruled that Defendant violated the FMLA by terminating Thom's employment rather than

---

[1] This Court has already denied Defendant's Motion for Reconsideration on the Court's grant of Summary Judgment for Plaintiff, Carl Thom, Jr., ruling that there is no new evidence to require reversal of the Court's decision.

granting him additional FMLA leave thereby rendering Defendant's argument without merit. As demonstrated in the briefs regarding summary judgment, Defendant had ample notice of Thom's need for additional leave. In addition, under its CBA, Defendant could not charge Thom with attendance points based on his FMLA qualified absences. Finally, as determined by this Court, Thom is entitled to use the calculating method most beneficial to him – not the rolling calendar as urged by Defendant.[2]

Defendant further confuses the issues relevant at this stage of the litigation as it continues to dispute facts which this Court has concluded entitle Thom to summary judgment. Defendant attempts to relitigate the issues concerning Thom's FMLA leave.[3] Defendant maintains that the facts it cites demonstrate Thom's termination was justified. As this Court has previously concluded on two (2) occasions that Thom's termination violated the FMLA, these issues are clearly superfluous.

Additionally, Defendant urges this Court to review for a third time Thom's arbitration and the subsequent decision. This Court has clearly rejected the argument that the arbitration decision has any bearing on Thom's claim as the arbitration only dealt with the "just cause" standard in the CBA. Contrary to Defendant's assertion, the arbitrator did not reject Thom's FMLA claim.[4]

As much of the information in Defendant's Brief relates to the issues fully adjudicated at the Summary Judgment stage, Defendant is clearly attempting to confuse the issues and file

---

[2] Defendant ignores this Court's ruling on not only the Motions for Summary Judgment and Reconsideration, but also this Court's ruling on the Motions in Limine in which the Court established that any information concerning the calculating method is not relevant to the issues of damages.

[3] In fact, pages 1-11 of Defendant's Brief is almost identical to its prior motions for Summary Judgment and Motion for Reconciliation.

[4] Defendant merely ignores this Court's ruling on numerous occasions in which the Court has found that the arbitration has no effect on Thom's FMLA claims as it "dealt only with whether [Thom] was dismissed for just cause and did not involve the FMLA claims raised in this lawsuit." (Memorandum Opinion and Order, filed June 12, 2008).

a second Motion for Reconsideration. Thus, this Court should disregard the superfluous information in Defendant's Brief.

## II. LAW AND ARGUMENT

### A. Regular Rate Back Pay

Contrary to Defendant's assertion, Thom's damages are not limited to the time period from July 18, 2005 through November of 2007.[5] Defendant has failed to sufficiently demonstrate that Thom is not entitled to all of the damages cited in his Motion for Award of Back Pay, Equitable Relief, Prejudgment Interest and Liquidated Damages.

#### 1. Thom Is Entitled To Collect Damages Beginning on June 17, 2005.

Defendant asserts that Thom should not begin collecting damages until July 18, 2005 because that is the date that Dr. Vela released Thom to return to work. However, Defendant's argument is flawed. Thom informed Baker that he needed the weekend of June 17, 2005 in order for his shoulder to fully heal and he would return to work the following morning. (Thom Depo. pp. 101-102). Further, Thom testified consistently that he would have been able to return to work on June 27, 2005, his original return to work date, if not sooner. (Thom Depo. pp. 24-25). Because Thom was having difficulty in scheduling an appointment with Dr. Brems and because Baker was pressuring him into obtaining medical certification or else be fired, Dr. Vela extended his medical leave until July 18, 2005 in order to allow Thom sufficient time to schedule an appointment with Dr. Brems. (Thom Depo. p.114). However, Thom could have returned to work as soon as his shoulder felt better, which he believed would have been the first workday after he was terminated. In fact, Dr. Brems testified that he would

---

[5] Defendant erroneously cites August of 2007 as the date of the plant's sale in its headings. It is clear from the text of the document that Defendant intended to cite November 1, 2007 as the latest date at which Thom's damages end. Regardless of this fact, Thom maintains that he is entitled to damages through the point at which the Tiffin facility closed – December 31, 2007.

3

have released Thom to return to work whenever Thom felt that he could perform the functions of his position. (Brems Depo. pp. 45-46).

Unfortunately, Defendant terminated Thom's employment prior to his ability to return to work. As such, Thom lost his job and his health insurance and therefore was not able to meet with Dr. Brems in order to be "released" to return to work. (*See* Thom depo. pp. 25-26). Defendant did not accept Dr. Vela's medical slip when Thom initially presented it, yet it now wishes to use it in order to limit Thom's damages. Defendant's argument is clearly nonsensical in that there was no job to which Thom could be released, and therefore, there is no subsequent medical documentation. Therefore, Thom is entitled to collect damages beginning on June 17, 2005, the date of his termination. In the alternative, Thom is entitled to collect damages beginning on June 27, 2005 – the date on which Thom testified that he was certain he could return to work.

### 2. Thom Is Entitled to Collect Damages Beyond the Date He Obtained Subsequent Employment.

It is well established that defendants have the burden of proving a plaintiff's failure to mitigate his damages. *Kaplan v. International Alliance of Theatrical, etc.*, 525 F.2d 1354, 1363 (9th Cir. 1975). This Court has ruled that Thom is entitled to damages due to Defendant's violation of the FMLA and Thom has satisfied his burden of producing sufficient evidence to demonstrate his damages. It is now Defendant's burden to demonstrate that Thom is not entitled to all of the damages he claims. *Rasimas v. Michigan Department of Mental Health*, 714 F.2d 614 (6th Cir. 1983); *see also, NLRB v. Reynolds*, 399 F.2d 668, 669 (6th Cir. 1968); *McCann Steel Co. v. NLRB*, 570 F.2d 652, 655 n.4 (6th Cir. 1978); *Marks v. Prattco, Inc.*, 633 F.2d 1122, 1125 (5th Cir. 1981). Defendant may satisfy this burden only if it establishes that 1) there were substantially equivalent positions which were available; and 2) Thom failed to use

reasonable care in seeking such positions. *Rasimas*, *supra*, 714 F.2d at 623-24. As discussed below, Defendant cannot overcome its burden.

In order to satisfy the first element, Defendant must demonstrate that there were positions available to Thom which afforded him "virtually identical promotional opportunities, compensation, job responsibilities, working conditions, and status." *Rasimas* 714 at 624; *see also, Ford Motor Co. v. EEOC*, 458 U.S. 219, 73 L. Ed. 2d 721, 102 S. Ct. 3057 (1982) ("plaintiff 'need not go into another line of work, accept a demotion, or take a demeaning position'"); *McCann Steel Co. v. NLRB*, 570 F.2d 652, 655 (6th Cir. 1978) ("we believe that substantially equivalent employment refers to the hours worked…as well as the nature of the work there"). Defendant has offered <u>no</u> evidence that there were substantially equivalent positions available to Thom. Thus, Defendant has failed to sufficiently prove that Thom has failed to adequately mitigate his damages.

Even if there were substantially equivalent positions available, Thom used reasonable care and diligence in seeking reemployment. Thom is not required to demonstrate that he was successful in completely mitigating his damages, rather he is only required to make reasonable efforts in light of his individual characteristics and the job market. *Killian v. Yorozu Auto. Tenn., Inc.*, 454 F.3d 549, 557 (6th Cir. 2006) (citing *Rasimas, supra*, 714 F.2 at 624).

Defendant argues that because Thom limited his search to manufacturing employers, he failed to mitigate his damages. It is clear from the case law cited above that Thom need not search for employment outside of his field. Thom began working for Defendant at age seventeen (17) and continued to do so for approximately thirty-six (36) years prior to his abrupt termination. As such, Thom does not possess job skills other than working on the production line at Defendant's plant.

5

Defendant cites a few cases for its proposition that Thom is not entitled to recover damages because he "removed himself from the job market." (Defendant's Brief p. 16). However, the cases cited by Defendant are clearly distinguishable and have no bearing on Thom's damages. Further, the fact that Thom went to school to obtain his GED does not limit his damages. *See Killian v. Yorozu Auto. Tenn., Inc.*, 454 F.3d 549, 557 (6th Cir. 2006). In *Hunter v. Westinghouse Elec. Corp*, 576 F.Supp. 704 (S.D. Ohio 1983), the Court limited the plaintiff's damages because she ceased looking for employment in order to adopt an infant and could not work. Similarly, in *Falls Stamping & Welding Co. v. Int'l Union, United Auto, Aircraft, & Agr. Implement Workers of Am.,* 485 F.Supp. 1097 (N.D. Ohio 1980), the Court reduced both plaintiffs' back pay damage awards because one ceased looking for work once he began collecting welfare and the other did not earn wages for a period of time due to a strike at her current employer. Likewise in *Hansard v. Pepsi-Cola Metropolitan Bottling Co., Inc.*, 865 F.2d 1461 (5th Cir. 1989), the plaintiff merely stopped searching for employment altogether and began selling odds and ends at a flea market.

Unlike the plaintiffs in these cases, Thom did not voluntarily abandon his search for reemployment. Instead, because Thom is a disabled veteran and entitled to services from the Ohio Department of Job and Family Services Veteran Administrator ("Veteran's Administrator"), Thom sought assistance in his search for subsequent employment. Despite applying for positions both on his own and with the assistance of other individuals, including the Veteran's Administrator, Thom's search was futile. (Thom Depo. p.28). Thom was informed that he would be unable to obtain subsequent employment without first obtaining his GED. (Thom Depo. p. 30). As such, Thom did what was reasonable in order to mitigate his damages and quickly become reemployed – he obtained a GED.

Further, it is well established that a plaintiff still meets the duty to mitigate his damages despite obtaining an education. *See Keller v. Connaught, Inc.*, 1997 U.S. Dist. LEXIS 1251 (E.D. Pa. Feb. 6, 1997). *See, e.g., Hanna v. American Motors Corp.,* 724 F.2d 1300, 1308 (7th Cir. 1984). In *Keller,* the Court held:

> education is designed to secure comparable employment; for those who cannot find work, education can be the only path to mitigation. For instance, when a plaintiff cannot find comparable work without an additional degree or training, the plaintiff is not doubly benefited by going to school—she simply has no other way into the job market. Thus, it is proper to attend school, not as a means to 'abandon the job market but, on the contrary, to acquire marketable skills and thus to enter a labor pool.'

Similarly, the Court in *Hanna* determined that the plaintiff was entitled to all of his back pay damages despite going to school prior to obtaining subsequent employment because the plaintiff attempted, yet failed, at obtaining employment without the education. Thus, this Court should not deduct from Thom's back pay award merely because he had to obtain a GED before he could obtain subsequent employment.

Defendant additionally cites *Aguinaga v. United Food and Commercial Workers Int'l Union*, 854 F.Supp. 757 (D. Kan. 1994) for its assertion. However, the decision is favorable to Thom's position. The Court determined the defendant failed to overcome its burden because the area in which the plaintiffs lived presented no equivalent employment to that which they had with the defendant. Similarly, due to the rural nature of Tiffin and the surrounding areas, there are not many positions for which Thom is qualified, nor do they compensate an employee in an amount that is substantially equivalent to that which Thom was making.

Thom ultimately found subsequent employment at Tahoe Corporation of America. Unfortunately, Thom was not earning the amount of wages he earned with Defendant. However, the position with Tahoe was substantially equivalent in the type of work performed

7

and promotion opportunities. Defendant urges this Court to limit Thom's back pay because he ceased looking for work after obtaining employment with Tahoe. Defendant's argument is nonsensical. Thom was only earning the amount of wages he earned with Defendant because he worked there for approximately thirty-six (36) years. It is because of Defendant's violation of the FMLA that Thom's wages were reduced to $10.85 per hour. Defendant has yet again failed to meet its burden in establishing that there were positions available to Thom in which he could have earned the same wages he earned with Defendant.

Further, Defendant's reliance on *Picinich v. United Parcel Serv.* is misplaced. Contrary to Defendant's assertion, the Court in *Picinich* did not state that a plaintiff must continue looking for subsequent employment after obtaining a similar position. Rather, the Court limited the plaintiff's back pay award because he obtained a job after his termination with Defendant, quit this subsequent employment, stopped looking for alternative employment, and refused to further his education as recommended by his career counselors. By contrast, Thom continued working for Tahoe and working towards obtaining raises in order to reduce his back pay damages. Unfortunately, it is unlikely that Thom will work long enough to earn the amount of wages he earned with Defendant as he will not be able to work another thirty plus years.

### 3. Thom Is Entitled to Back Pay Damages Through the Date of Defendant's Tiffin Plant Closing.

Defendant next asserts that Thom should not be awarded damages beyond the sale date of the Tiffin facility. However, but for Thom's termination, he would have been employed until the facility actually closed in December of 2007. The Sixth Circuit announced that a plaintiff is to be placed in the situation he would have been had the unlawful conduct not occurred. *Shore v. Federal Exp. Corp.*, 777 F.2d. 1155, 1158 (6th Cir.). Defendant cites

8

*Shore* for this proposition but fails to demonstrate how Thom would not have remained employed at the same position beyond the date of the sale. In fact, it is clear that <u>all</u> of Defendant's employees at the time of the sale were retained by the new owners and continued to work under the exact conditions with the exact same collective bargaining agent – the United Steelworkers of America.

The cases cited by Defendant are consistent with this proposition. In *Hill v. Spiegel, Inc.,* 708 F.2d 233 (6th Cir. 1983), *N.L.R.B. v. Master Slack and/or Master trousers Corp.*, 773 F.2d 77 (6th Cir. 1985), and *Blackburn v. Martin*, 982 F.2d 125 (4th Cir. 1992), the defendants completely eliminated the plaintiffs' positions and/or divisions. However, it is clear that Thom's position was retained after the sale as all of the blocker casers were retained until the actual closing of the facility. Further, in *Rhoads v. FDIC*, 956 F.Supp. 1239 (D. Md. 1997), the Court concluded that the sale of the company cut off the plaintiff's damages only because the undisputed evidence demonstrated she would <u>not</u> have been offered a position with the new company. Based on the undisputed evidence that the sale of the plant did not displace any of Defendant's employees, Defendant remains liable to Thom through the date of the plant closing – December 31, 2007.

**B. Overtime Pay**

In its Brief, Defendant argues Thom is not entitled to any overtime damages because Defendant did not fill his position until August of 2006. However, Defendant fails to take into account that Thom could not only have performed the overtime work of the blocker casers, but due to his high seniority, he would have been offered the overtime work of a moldmaker. (Swander Depo. p.7). Further, Thom is not required to prove his damages with precision. *See Lovely v. Aubry*, 24 Fed. Appx. 337, 341 (6th Cir. 2001) (citing *Wooldridge v. Marlene Indust.*

9

*Corp.*, 875 F.2d 540, 549 (6th Cir. 1989).  Any ambiguity in the amount of lost wages should be resolved against the employer.  *Id.*  Thom has demonstrated that for the last five (5) full years of his employment with Defendant, he earned a substantial amount of overtime wages.  Further, the evidence clearly demonstrates that employees with less seniority than Thom worked a substantial amount of overtime throughout the date of the plant's closing.  Thus, Thom is entitled to an award for compensation of lost overtime wages.

### C. Equitable Relief

Defendant attempts to avoid liability with respect to Thom's retirement benefits merely because it sold the plant.  However, as demonstrated above, Thom would have been entitled to these benefits <u>but for</u> Defendant's unlawful conduct.  <u>All</u> of Defendant's employees who met the requirements were entitled to these benefits upon the closure of the plant.  As such, Thom is clearly entitled to them.

### D. Liquidated Damages

Defendant has cited several cases in which the plaintiff was awarded liquidated damages for a defendant's interference with its employee's FMLA rights.  However, Defendant has cited no case law in which an employer has been determined to have interfered with its employee's FMLA rights and not been subject to liquidated damages.  This is likely because in an interference claim, the Defendant's motivation is irrelevant.  Further, Defendant incorrectly states that it must only demonstrate that it had a subjectively reasonable belief that it acted in good faith.[6]  In order to avoid the normal doubling of damages, Defendant must demonstrate that it also had objectively reasonable grounds for believing its action was not a violation of the FMLA.

---

[6] Thom maintains that Defendant did not have a reasonable good faith belief that its actions were lawful and will be addressed in further detail later in this section.

10

As discussed more fully in Thom's Motion for an Award of Back Pay, Equitable Relief, Prejudgment Interest and Liquidated Damages, Defendant cannot establish this objective element. Most importantly, Defendant approved Thom for leave beyond the date at which it maintains he exhausted his twelve (12) week entitlement under the Act. Even if Defendant reasonably believes that it used the rolling calendar, it cannot demonstrate that it was objectively reasonable in assessing Thom points for absences for which Defendant originally approved. Further, nowhere in writing did Defendant inform its employees that it used the rolling calendar method, including in its FMLA policy, despite adding the appropriate language to a subsequent policy.

The fact that Defendant never indicated to Thom that he had exhausted his FMLA entitlement further demonstrates that Defendant's actions were not objectively nor subjectively reasonable. During conversations with Thom the week of June 13, 2005, Baker only indicated that Thom needed to obtain medical certification in order to "extend" his leave. At no time did she indicate that his absences were no longer protected by the FMLA due to the exhaustion of his 12 weeks. In fact, Baker informed Thom that she would remove the attendance points when he turned in his medical certification. (Baker Depo. pp. 138-139; Thom Depo. p. 107). Under the FMLA, Defendant is required to treat all absences as FMLA protected until such time as the employee can obtain medical documentation and Defendant can make an appropriate determination. *See Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 94 (2002). Even the Defendant agrees that complexity of the legal framework is no excuse for interfering with an employee's FMLA rights and thus allows for an award of liquidated damages. (Defendant's Brief p. 20). Thus, there is no evidence that Defendant's actions were objectively reasonable, and therefore, Thom is entitled to an award of liquidated damages.

Contrary to Defendant's assertion, its actions were also not subjectively reasonable. Although Defendant contends it always used the rolling calendar calculating method, its actions prove otherwise:

- Defendant approved Thom for leave beyond the period it states he used up his twelve weeks;

- Defendant never informed Thom he had no remaining FMLA leave;

- Defendant merely informed Thom that he needed to obtain medical certification;

- Defendant assured Thom it would remove the attendance points once he obtained certification; and

- Defendant's own policy required a Human Resources representative to send Thom information indicating the number of days he has remaining at the beginning of his FMLA leave, yet this was not done.

Defendant's actions were neither objectively reasonable nor in subjective good faith and Defendant has not sufficiently proven that this Court should deviate from all cases cited by Defendant, which are blatantly favorable to Thom, and deny Thom a doubling of damages.

### III. <u>CONCLUSION</u>

Based on the foregoing testimony, relevant case law, documentary evidence and the record as a whole, Thom respectfully requests this Court award Thom back pay, prejudgment interest, liquidated damages and pension benefits as outlined in his Motion for an Award of Back Pay, Equitable Relief, Prejudgment Interest and Liquidated Damages.

                Respectfully submitted,

                _____
                John D. Franklin
                Attorney for Plaintiff

## **CERTIFICATE OF SERVICE**

  This is to certify that the foregoing Plaintiff's Memorandum in Response to Defendant's Brief Regarding Alleged Damages Arising Out of Plaintiff's Interference Claim was filed electronically on <u>November 15, 2008</u>.  Notice of this filing will be sent to Charles F. Billington III and David A. Campbell, Counsels for Defendant, by operation of the Court's electronic filing system.

                <u>s/John D. Franklin</u>
                John D. Franklin